ROTHSCHILD, P. J.—
I respectfully dissent.
Under the first prong of the anti-SLAPP statute, the defendants must establish that the challenged causes of action arise “from any act of [the defendants] in furtherance of the [defendants’] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.” (Code Civ. Proc., §425.16, subd. (b)(1).) Here, there is no dispute that when CNN reports the news to the public it is exercising its right of free speech under the First Amendment. (See Lieberman v. KCOP Television, Inc. (2003) 110 Cal.App.4th 156, 164 [1 Cal.Rptr.3d 536].) Acts that help advance or assist CNN in the exercise of that right are “acts in furtherance of the right of free speech” for purposes of the anti-SLAPP statute. (See Collier v. Harris (2015) 240 Cal.App.4th 41, 49 [192 Cal.Rptr.3d 31]; Tamkin v. CBS Broadcasting, Inc. (2011) 193 Cal.App.4th 133, 143 [122 Cal.Rptr.3d 264].) If such act[s] are made “in connection with a public issue or an issue of public interest,” they constitute “protected activity” for purposes of the anti-SLAPP law. (Code Civ. Proc., § 425.16, subd. (e)(4); Navellier v. Sletten (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (Navellier).)
In Hunter v. CBS Broadcasting Inc. (2013) 221 Cal.App.4th 1510 [165 Cal.Rptr.3d 123] (Hunter), Division Seven of this court held that the decision by the owner of a television news show (CBS) not to hire the plaintiff as the show’s on-air weather anchor constituted protected activity under the first prong of the anti-SLAPP statute, regardless of whether the decision was allegedly based on unlawful age and gender discrimination. CBS’s selections of its weather anchors, the court explained, “were essentially casting decisions regarding who was to report the news on a local television newscast, [which] ‘helped advance or assist’ ” the reporting of the news and the creation of a television show, “both forms of First Amendment expression.” (Id. at p. 1521.)
*841 Here, the evidence produced in connection with the anti-SLAPP motion reveals that Stanley Wilson had a more substantial and significant role in helping to advance and assist in reporting the news at CNN than the on-air weather reporter in Hunter.[1] According to Wilson’s declaration, he “produced a wide range of stories, investigative reports, and live remote coverage, including breaking news, political coverage, and documentary programs.” Among other news events, he covered the 2012 election, “tornadoes in Wisconsin and Moore, Oklahoma, the rampage of cop-killer Christopher Dorner, mass shootings in California, Colorado, and Arizona, wildfires in seven western states, and documentaries on Michael Jackson and Rodney King.” He wrote and produced daily reports on Hurricane Katrina, produced live coverage of the September 11, 2001 terrorist attacks, produced field coverage of the Florida recount in the 2000 presidential election and the Supreme Court’s ruling in Bush v. Gore,[2] and contributed “original stories, breaking news and companion pieces to support reporter packages” to CNN.com.
Wilson states that he has “received more than two dozen journalism awards for breaking news, investigative reporting, and documentary programs, including Emmy Awards . . . ; two Associated Press Awards; a Gracie Award; a Vision Award from NAMIC (National Association for Multi-Ethnicity in Communications); and the International Documentary Association award.” He was also “part of the CNN team honored with a George Foster Peabody Award for coverage of Hurricane Katrina.”
Wilson’s duties as a “Producer I” initially included: “[wjorking with correspondents and managers to carry out and generate story ideas for air; researching; news gathering; producing live shots for air; post-production; and writing for the CNN Wire desk (later called CNN.com).” After he was promoted to “Producer II” in 2003, Wilson “began pitching and producing long-form documentary programs” and “focused more and more on breaking news, political coverage, and documentary programs.” He notes that he “was not a reporter on air and had only one brief interview as a reporter where [he] *842 was actually shown on TV.” He did, however, write ‘“approximately 200 articles for publication while at CNN.”
In support of its anti-SLAPP motion, CNN submitted the declaration of Terence Burke, the vice-president of domestic newsgathering for CNN. Burke stated that Wilson was a field producer “responsible for researching, producing and writing news stories for CNN and CNN.com.” Field producers “are expected to investigate and gather all relevant facts and information about [an assigned] story, including by making calls to and inquiries of witnesses and other interested parties, finding video or photographs that relate to the story, reviewing the wire copy, and collecting other information related to the story. . . . The field producer then uses all of the information gathered as well as his or her own background, experiences, creativity and skill, to write an original news story.” The “public’s perception of a news story,” Burke stated, “is shaped, in part, by the producer who wrote the story.”
Another CNN representative, Richard Griffiths, explained that field producers such as Wilson submit their stories “to the ‘Row,’ ” where “editors and editorial supervisors will assess the value of the story and review it for accuracy, structural issues, fact checking, timeliness, clarity, grammar and otherwise ensure that it meets CNN’s standards for news reporting.”
The evidence establishes that Wilson had a significant role in shaping and reporting the news. He researched, wrote, and produced stories for CNN television and CNN’s website, and was expected to use his experience, creativity, and skill to shape the public’s perception of the news. His work, in short, significantly impacted the content of the news reported to the public. His extensive list of prestigious journalism awards indicate that his contributions to the field were widely and repeatedly recognized. Without diminishing the importance of the work of local weather reporters, the evidence indicates that Wilson “ ‘helped advance or assist’ ” the First Amendment activity of news reporting in ways far more substantive and meaningful than the actions of the on-air weather reporters that were the subject of Hunter. (Hunter, supra, 221 Cal.App.4th at p. 1521.) Thus, if the employment decision of hiring a weather anchor in Hunter “qualifies as an act in furtherance of the exercise of free speech,” so do the employment decisions concerning the work of a CNN news producer such as Wilson. {Ibid.)
The majority, however, concludes that if CNN’s actions are covered by the first prong of the anti-SLAPP statute, it will have a “special immunity from generally applicable laws.” (Maj. opn. ante, at p. 836.) This point, like a similar argument rejected in Hunter, is “predicated on the ‘fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense. [Citation.] In *843 fact, the statute does not bar a plaintiff from litigating an action that arises out of the defendant’s free speech or petitioning [citation],’ nor does it confer ‘any kind of “immunity” ’ on protected activity. [Citation.] Instead, under [Code of Civil Procedure] section 425.16, a plaintiff may pursue a discrimination claim or any other cause of action based on protected activity if he or she is able to present the ‘minimal’ evidence necessary to demonstrate a reasonable probability of prevailing on the merits.” (Hunter, supra, 221 Cal.App.4th at p. 1525.) The anti-SLAPP law thus provides no exception to laws protecting employees from unlawful discrimination. When the anti-SLAPP law applies, it only requires the plaintiff to show that the lawsuit has some “ ‘minimal merit’ ” before proceeding. (Hunter, supra, 221 Cal.App.4th at pp. 1525-1526.) It does not require dismissal of the case. Although the anti-SLAPP statute places an additional burden on these plaintiffs, that burden is equally placed on every other plaintiff whose case comes within the scope of the anti-SLAPP statute. Indeed, if the requirement that a plaintiff make a prima facie showing excused every case from the anti-SLAPP law, the entire anti-SLAPP law would be eviscerated.
The majority rejects Hunter and relies on Nam v. Regents of University of California (2016) 1 Cal.App.5th 1176 [205 Cal.Rptr.3d 687] (Nam). Nam involved allegations by a UC Davis Medical Center resident that her supervisors had sexually harassed her and unlawfully retaliated against her because she rejected a sexual overture from the residency program director and publicly challenged the medical center’s policies. (Id. at pp. 1180-1182, 1192.) The defendants argued that her causes of action arose out of statements made during a disciplinary process, which was an “ ‘official proceeding authorized by law’ ” under the anti-SLAPP statute. (Id. at p. 1186.) The Nam court agreed with the plaintiff that her causes of action arose not from the defendants’ investigation, but from “its harassment and retaliation.” (Id. at p. 1187.)
Aside from its significant factual differences from the present case, Nam is unpersuasive because it engaged in precisely the type of analysis our Supreme Court and Courts of Appeal have insisted must not be done. Specifically, the court conflated the first prong analysis, in which the court determines whether the alleged injury-producing act was in furtherance of the defendant’s right of petition or free speech, and the second prong analysis, which consider the merits of the cause of action. By considering the merits of whether the defendant’s acts were unlawful—i.e., whether they were discriminatory, harassing, or retaliatory—the court “confuse[d] the threshold question of whether the SLAPP statute applies with the question whether [the plaintiff] has established a probability of success on the merits.” (Fox Searchlight Pictures, Inc. v. Paladino (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906], fn. omitted; see also Navellier, supra, 29 Cal.4th at p. 94; Sprengel v. Zbylut (2015) 241 Cal.App.4th 140, 156 [193 Cal.Rptr.3d 626, 194 *844 Cal.Rptr.3d 407]; Hunter, supra, 221 Cal.App.4th at pp. 1522-1523; Tuszynska v. Cunningham (2011) 199 Cal.App.4th 257, 268 [131 Cal.Rptr.3d 63]; Coretronic Corp. v. Cozen O’Connor, supra, 192 Cal.App.4th at pp. 1389-1390; Birkner v. Lam (2007) 156 Cal.App.4th 275, 285 [67 Cal.Rptr.3d 190]; Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist. (2003) 106 Cal.App.4th 1219, 1234 [132 Cal.Rptr.2d 57].)[3] The majority in this case makes the same mistake.
In Hunter, for example, the court rejected the plaintiffs effort to “confuse []” the analysis of protected activity by conflating the conduct underlying the plaintiffs claim (the failure to hire the plaintiff) with the allegedly unlawful discriminatory motive. (Hunter, supra, 221 Cal.App.4th at pp. 1522-1523.) Courts, Hunter explained, “ ‘must be careful not to conflate such separate and distinct questions.’ ” (Hunter, supra, 221 Cal.App.4th at p. 1523; accord, Nesson v. Northern Inyo County Local Hospital Dist. (2012) 204 Cal.App.4th 65, 83 [138 Cal.Rptr.3d 446], disapproved on another point in Fahlen v. Sutter Central Valley Hospitals (2014) 58 Cal.4th 655, 687 [168 Cal.Rptr.3d 165, 318 P.3d 833].) Here, Wilson and CNN agree on the importance of keeping CNN’s motives for its actions out of the first prong analysis, with each insisting that we must focus “squarely on the defendant’s activity that gave rise to its asserted liability . . . rather than on any motive the plaintiff may be ascribing to the activity.” Nevertheless, the majority rejects the position of both parties, as well as the weight of authority, and expressly conflates, in its first prong analysis, CNN’s alleged discriminatory motive and the conduct upon which Wilson’s action is based.
The Nam court explained that failing to consider the merits of the plaintiff’s claims as part of the first prong analysis “would subject most, if not all, harassment, discrimination, and retaliation cases to motions to strike.” (Nam, supra, 1 Cal.App.5th at p. 1189.) The statement, which the majority repeats, is incorrect. First, only those causes of action—regardless of their nature—that arise from acts “in furtherance of the [defendant’s] right of petition or free speech ... in connection with a public issue” would be subject to an anti-SLAPP motion. (Code Civ. Proc., § 425.16, subd. (b)(1).) Moreover, as to the cases that do arise from such acts, the fact that the cause of action is “subject” to an anti-SLAPP motion does not mean that it will be stricken; it merely means that the court will then engage in the second prong analysis to evaluate whether it has the minimal merit necessary to proceed. Thus, “the statute poses no obstacle to suits that possess minimal merit.” (Navellier, supra, 29 Cal.4th at p. 93.)
*845 Hunter is also instructive on the question whether CNN’s decisions concerning Wilson’s employment were made in connection with an issue of public interest.[4] On this issue, the Hunter court explained that “the proper inquiry is not whether CBS’s selection of a weather anchor was itself a matter of public interest; the question is whether [that decision] was ‘in connection with’ a matter of public interest.” (Hunter, supra, 221 Cal.App.4th at pp. 1526-1527.) That is, even if the public is not interested in who CBS hired to report the weather, the public is interested in weather reports. Therefore, “CBS’s decisions regarding who would present those reports to the public during its broadcasts was necessarily ‘in connection’ with that public issue.” (Id. at p. 1527.)
In addition to reporting the weather, CNN reports all manner of news. More particularly, we are concerned here with the public interest in the news stories that Wilson wrote, produced, and reported. Wilson’s stories, by his own account, concerned such matters as national elections, tornadoes, mass killings, wildfires, Hurricane Katrina, and the September 11, 2001 terrorist attacks, as well as popular documentaries. The subjects of Wilson’s body of work with CNN undeniably concern matters that are of interest to the public as much or more than local reports of the weather. Just as employment decisions concerning the hiring of a weather anchor are made “ ‘in connection with’ ” issues of public interest, CNN’s employment decisions concerning a news producer were made “ ‘in connection with’ ” issues of public interest. (Hunter, supra, 221 Cal.App.4th at p. 1527.)
In discussing Wilson’s cause of action for defamation, the majority focuses on whether Wilson “was a celebrity” or “a person in the public eye,” or merely “a behind-the-scenes person the public probably had never heard of.” (Maj. opn. ante, at p. 838.) The public interest issue, however, does not turn on whether Wilson is a public celebrity. Regardless of whether the general public is aware of Wilson’s name, CNN’s actions and statements concerning him—a widely honored news and documentary producer with one of the world’s largest and most respected news organizations—are connected with a matter of public interest.
For all these reasons, I disagree with the majority’s conclusion that the challenged employment decisions and alleged defamatory statement are not covered by the anti-SLAPP statement. I would hold that a news organization’s employment decisions concerning a person who, like Wilson, has an undisputedly central role regarding the content of the news concerns an act in *846 furtherance of the organization’s First Amendment rights and made in connection with issues of public interest.
Respondents’ petition for review by the Supreme Court was granted March 1, 2017, S239686.

 “In deciding whether the initial ‘arising from’ requirement is met, a court considers ‘the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.’ ([Code Civ. Proc.,] § 425.16, subd. (b).)” (Navellier, supra. 29 Cal.4th at p. 89; see also Coretronic Corp. v. Cozen O’Connor (2011) 192 Cal.App.4th 1381, 1389 [121 Cal.Rptr.3d 254] [the “court reviews the parties’ pleadings, declarations and other supporting documents to determine what conduct is actually being challenged”].) Courts “do not consider the veracity of respondents’ allegations” at this stage (Castleman v. Sagaser (2013) 216 Cal.App.4th 481, 493 [156 Cal.Rptr.3d 492]), but do “accept plaintiffs’ evidence as true for purposes of [the court’s] analysis” (Freeman v. Schack (2007) 154 Cal.App.4th 719, 733 [64 Cal.Rptr.3d 867], italics added).

 Bush v. Gore (2000) 531 U.S. 98 [148 L.Ed.2d 388, 121 S.Ct. 525],

 The only exception recognized by our Supreme Court for considering the legitimacy of the defendant’s conduct in the analysis of the first prong is when “the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law.” (Flatley v. Mauro (2006) 39 Cal.4th 299, 320 [46 Cal.Rptr.3d 606, 139 P.3d 2].) This exception does not apply here.

 As to Wilson’s first six causes of action, the majority concludes without explanation that these causes of action do not “implicate ... a matter of public interest.” (Maj. opn. ante, at p. 836.)