Filed 3/15/16  Zaghi v. Levy CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KAROOSH ZAGHI, | B258847 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC120466) |
| v. | |
| SHAOUL LEVY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Murphy Rosen, Paul D. Murphy, Jodi M. Newberry and Mark J. Nagle, for Defendants and Appellants Shaoul Levy, Aryeh Aslan, Jessie Liu and Raziel La Madrid Valiente.

Daar & Newman, Jeffrey J. Daar and Michael R. Newman, for Defendant and Appellant Tony Frazier.

Ervin Cohen & Jessup, Geoffrey M. Gold and Eric W. Cheung for Defendants and Appellants Great American Chicken Corp., Inc. and U.S. Food Corp., Inc.

Hamburg, Karic, Edwards & Martin, Steven S. Karic, Gregg A. Martin and David A. Householder, for Plaintiff and Respondent Koorosh Zaghi.

_____

Karoosh Zaghi was employed by, and held a 20 percent ownership interest in, Great American Chicken Corp., Inc. and U.S. Food Corp., Inc., which operate a large number of franchised KFC and Long John Silver's fast-food restaurants. After his employment was terminated and his shares of stock involuntarily repurchased, Zaghi sued the two companies and several of his former business associates for fraud, breach of fiduciary duty, breach of contract, defamation and related common law and statutory causes of action. Zaghi's lawsuit sought $20 million in compensatory damages and restoration of his employment and ownership interests in the companies. Great American Chicken and U.S. Food moved pursuant to Code of Civil Procedure section 425.16 (section 425.16) to strike several of the causes of action pleaded. Shaoul Levy and four of the other individual defendants did as well. The trial court denied both motions, ruling any allegations of protected speech or petitioning conduct in Zaghi's first amended complaint were incidental to the gravamen of the challenged causes of action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Zaghi's First Amended Complaint*

On November 26, 2013 Zaghi filed a 66-page, 237-paragraph first amended complaint containing 15 causes of action and naming as defendants Great American Chicken and U.S. Food (collectively corporate defendants), Levy, Tony Frazier, Aryeh Aslan, Jessie Liu and Raziel La Madrid Valiente (collectively individual moving defendants) and two other individuals and a (suspended) mortgage broker. Zaghi alleged that he and his friend and business partner Ataollah Aminpour had originally formed Great American Chicken and U.S. Food in 2011 to acquire 70 KFC and 21 Long John Silver's franchised restaurants through negotiations with Yum Brands, a publicly traded Fortune 500 corporation that owned the two brands. Zaghi held a 20-percent interest in each corporation and was employed as an officer and served as a director of both. Zaghi's employment was terminated in March 2013 (Aminpour had been discharged at an earlier date) based on false allegations of misconduct and self-dealing; Levy and Aslan then exercised their purposed right to repurchase his stock for a nominal amount and

2

excluded Zaghi from participating in the companies in any respect—the culmination of defendants' scheme to acquire full control of the companies and obtain Zaghi's and Aminpour's ownership interests in them. Since February 2013 Zaghi has received no wages, income or distributions from either company. All those actions, Zaghi alleged, were fraudulent and in violation of various statutory and contractual rights he enjoyed as a shareholder and employee of the companies.

The first amended complaint alleged Zaghi was fraudulently induced into making substantial personal financial commitments in connection with the acquisition of the KFC and Long John Silver's restaurants and his interests in the two companies were thereafter misappropriated through a series of wrongful actions. The defendants allegedly made misrepresentations about the plans for funding and operating the joint venture formed by Zaghi, Aminpour, Frazier and Levy to acquire the restaurants; misrepresentations and concealment of the status of bank signing authority, which gave Levy single signature authority over corporate accounts; misrepresentations regarding Zaghi's responsibility for a loan from the Small Business Administration; and a false promise that Zaghi would continue to be employed with the companies and retain his ownership interests if he cooperated in litigation against Aminpour after Aminpour's employment with the companies had been terminated and his stock repurchased. As to this final category of misconduct, Zaghi alleged he was improperly pressured into signing a false declaration that described Aminpour's purported wrongful conduct for use in the litigation. Zaghi also alleged he was defrauded into signing various corporate resolutions.[1]

In addition to Zaghi's claims regarding his employment and stock interests, the first amended complaint alleged he was defamed by written and oral statements by Levy, Aslan and Frazier to Yum Brands that Zaghi had been dishonest in his business dealings

---

[1] The first amended complaint also contains allegations concerning interference with Zaghi's exercise of his rights under the California Family Rights Act (CFRA) after he took leave to care for his wife, who was being treated for cancer, and denial of his right to inspect corporate books and records.

with Yum Brands and had purposefully failed to disclose information related to the ownership of Great American Chicken and U.S. Food and the financing for the acquisition of the KFC and Long John Silver's restaurants. The false accusations were made to hide defendants' own wrongdoing from Yum Brands. Between late December 2012 and the date of his termination, March 11, 2013, Levy, Aslan and Frazier repeatedly advised Zaghi that Yum Brands was seeking his removal from Great American Chicken and the elimination of his equity interest, apparently based upon the false and misleading statements made by the individual defendants to Yum Brands.

2. *The Motions To Strike*

Great American Chicken and U.S. Food moved pursuant to section 425.16 to strike eight of the 15 causes of action in the first amended complaint: fraud, negligent misrepresentation, breach of fiduciary duty, breach of shareholder agreements, breach of employment agreement, interference with the California Family Rights Act, wrongful termination in violation of public policy and defamation. The corporate defendants emphasized that the first amended complaint alleged, as part of their scheme to wrongfully terminate Zaghi and usurp his equity position in the companies, they had conspired with their litigation attorneys to coerce Zaghi into signing a false declaration for use in opposing Aminpour's motion for preliminary injunction in Aminpour's lawsuit against the companies. Those allegations, they argued, brought the challenged claims within the ambit of section 425.16 as an exercise of their right to petition.

The companies' special motion to strike made no separate argument with respect to the nature of the protected activity involved in the defamation cause of action, as the trial court noted in denying the motion: "The Company defendants' sole argument to support the first prong of the anti-SLAPP statute is based on the alleged coerced false declaration, including the involvement of [litigation counsel] in its preparation."[2]

---

[2] The corporate defendants did cite Civil Code section 47, subdivision (b), in arguing Zaghi would be unable to establish a probability of prevailing on that cause of action because the statements were subject to the litigation privilege.

4

Levy, Frazier, Aslan, Liu and Valiente also moved to strike seven of the 15 causes of action: fraud, negligent misrepresentation, breach of fiduciary duty, breach of joint venture agreement, breach of shareholder agreements, removal of directors and defamation. Like the corporate defendants, they argued the allegation that they had improperly pressured Zaghi into signing a perjured declaration for use in the Aminpour litigation, one of the four categories of false representations alleged in the complaint, constituted protected petitioning activity, thus satisfying the first prong of the section 425.16 analysis with respect to the six fraud-based causes of action they challenged. As to Zaghi's defamation claim, which they noted was made on information and belief and was extremely vague, the individual moving defendants argued that any statements made to Yum Brands during the time period identified were in furtherance of the then-pending litigation against Aminpour (described as Zaghi's coconspirator), as well as the investigation of Zaghi himself, which resulted in the current litigation. They relied upon a short paragraph in the declaration of Aryeh Aslan to support this contention: "In the first three months of 2013, we communicated with representatives of YUM including YUM's in-house lawyers. These communications were done for several reasons including but not limited to obtaining information to further our then pending litigation against Aminpour as well as our ongoing investigation of Zaghi. . . ."

3. *The Trial Court's Ruling*

After receiving opposition and reply papers, the trial court heard the two special motions to strike, as well as demurrers filed by defendants, over a period of three days. Following the final hearing the court denied both special motions to strike, finding that protected speech or petitioning activity was not the principal thrust or gravamen of any of the challenged causes of action and, therefore, not reaching the question whether Zaghi had demonstrated a probability of prevailing on his claims.[3] With respect to the causes of

---

[3] The court sustained without leave to amend the corporate defendants' demurrer to the breach of fiduciary duty and declaratory relief causes of action and the individual

5

action other than defamation, the court ruled, "[T]he incidental allegations of potentially protected activity—i.e., fraudulently coercing Zaghi into signing the declaration against Aminpour—do not constitute the 'injury producing conduct' that is the gravamen of plaintiff's causes of action." Rather, those causes of action were based on false representations regarding the joint venture, Zaghi's subsequent wrongful termination and the confiscation of his stock.

As for the defamation claim, "[a]lthough there may have been pending litigation and an investigation of Zaghi, the court finds defendants have failed to show the alleged defamatory statements were made in furtherance of the litigation or investigation. To the contrary, the allegations are that the defamatory statements were purportedly made to Yum in order to force plaintiff's termination and sale of his stock. Neither Yum nor Zaghi was a party to the litigation between the Companies and Aminpour. As to the current litigation, there is nothing to show that defamatory statements are protected because they later may result in litigation."

## DISCUSSION

1.  *Section 425.16: The Anti-SLAPP Statute*[4]

Section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Pursuant to subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing

_____

defendants' demurrer to the cause of action for interfering with CFRA rights. The demurrers as to several other causes of action were sustained with leave to amend.

[4]    SLAPP is an acronym for "strategic lawsuit against public participation." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn.1.)

6

made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in what is now a familiar two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

a. *Step one and mixed causes of action*

The moving party's burden on the threshold issue is to show "the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; see *Scalzo v. Baker* (2010) 185 Cal.App.4th 91, 98.) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is

7

whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech.  [Citations.]  'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e). . . .'"  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)  "If the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step."  (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271.)

When a special motion to strike pursuant to section 425.16 challenges a cause of action that involves both protected and nonprotected activity (sometimes referred to as a "mixed" cause of action), "if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion."  (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414; accord, *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 967-968; *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1574.)  On the other hand, if the allegations of nonprotected conduct are collateral to the substance of the cause of action, their presence does not prevent the court from applying the statute.  As we explained in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308, "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"  (Accord, *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103.)

In applying section 425.16 to mixed causes of action, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute."  (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181,

8

188; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-478 ["This dispute [involving ownership of property] and not any protected activity, is 'the gravamen or principal thrust' of the action. [Citation.] The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."]; see also *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 ["[t]he 'principal thrust or gravamen' test has been used to determine whether an action fits within the scope of the anti-SLAPP protection provided by section 425.16 when a pleading contains allegations referring to both protected and unprotected activity"].)

"The '"meaning of 'gravamen' is clear; 'gravamen' means the 'material part of a grievance, charge, etc.' [Citation.]" [Citation.] [¶] In the context of the anti-SLAPP statute, the "gravamen is defined by the *acts on which liability is based*." [Citation.] The "focus is on the principal thrust or gravamen of the causes of action, i.e., *the allegedly wrongful and injury-producing conduct* that provides the foundation for the claims."'" (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1175; accord, *Hunter v. CBS Broadcasting Inc*. (2013) 221 Cal.App.4th 1510, 1520.) Phrased somewhat differently, but to the same effect, "a cause of action can only be said to arise from protected conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff*—that falls within the act's definition of protected conduct." (*Old Republic Construction Program Group v. The Boccardo Law Firm, Inc*. (2014) 230 Cal.App.4th 859, 869; see *id*. at p. 868 ["a cause of action arises from protected conduct if the *wrongful, injurious act(s)* alleged by the plaintiff constitute protected conduct"].)

This analysis does not require an either-or determination or mean the gravamen of a cause of action must be based only on protected activity or on nonprotected activity. Rather, the proper statement of the rule, as articulated in *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551, footnote 7 is: "[W]here the defendant shows that the gravamen of a cause of action is based on

9

nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis." (Accord, *Kenne v. Stennis, supra,* 230 Cal.App.4th at pp. 967-968; *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc., supra,* 172 Cal.App.4th at p. 1574.)

b. *Step two*

If the defendant establishes the statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) In deciding the question of potential merit, the trial court properly considers the pleadings and evidentiary submissions of both the plaintiff and the defendant but may not weigh the credibility or comparative strength of any competing evidence. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) The question is whether the plaintiff presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Nonetheless, the court should grant the motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Taus,* at p. 714; *Wilson,* at p. 821; *Zamos,* at p. 965.)

c. *Standard of review*

The trial court's rulings on a special motion to strike are subject to our independent or de novo review. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; accord, *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

2. *The Trial Court Properly Denied the Special Motions To Strike*

a. *The fraud-related and contract causes of action*

Zaghi's first case of action alleged all defendants were liable for committing fraud based on their false representations of material facts and concealment or intentional failure to disclose material information to Zaghi (or their participation in an alleged conspiracy to defraud him). He further alleged, but for those misrepresentations,

10

concealments and failures to disclose, he would not have entered into the various agreements described in the complaint, incurred expenses, fees and costs, "or otherwise performed as alleged hereinabove." That same core charge of misconduct by the defendants (that is, their lengthy series of fraudulent acts) also underlies Zaghi's causes of action for negligent misrepresentation, breach of fiduciary duty, breach of joint venture agreement, breach of shareholders agreements, breach of employment agreement and wrongful termination and for removal of directors.[5]

As discussed, among the misrepresentations alleged was the promise that Zaghi would remain employed by Great American Chicken and U.S. Food if he cooperated in providing a declaration for use by the companies in their litigation with Aminpour. That promise, Zaghi further alleged, was paired with threats that, if he refused to sign the declaration, he would suffer the same fate as had Aminpour (loss of employment and stock interests in the companies). As a result of these threats and duress, Zaghi executed a declaration that contained errors and misstatements, as well as matters outside his personal knowledge.

Starting from the premise that encouraging a witness to provide false testimony in a pending lawsuit constitutes a statement made in connection with an issue under consideration by a judicial body and is thus protected activity within the scope of section 425.16, subdivision (e)(2) (see *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures, supra*, 184 Cal.App.4th at p. 1548 [conspiring to give false deposition testimony was protected activity under § 425.16, subd. (e)(2)]; see generally *Flatley v. Mauro, supra*, 39 Cal.4th at p. 322 ["[t]he litigation privilege has been applied in

---

[5] The corporate defendants, but not the individual moving defendants, also suggest the claimed misrepresentations and concealment are at issue in Zaghi's CFRA cause of action. Although the first 148 paragraphs of the first amended complaint (the "common allegations") and the five operative paragraphs of the fraud cause of action are incorporated by reference into each of the other 14 causes of action, it is difficult to understand how any of the misrepresentations alleged relate to this cause of action, even incidentally; and in their briefs Great American Chicken and U.S. Food do not separately address this issue.

'numerous cases' involving 'fraudulent communication or perjured testimony'"]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], [and] such statements are equally entitled to the benefits of section 425.16'"]), the corporate and individual moving defendants contend the trial court erred in concluding their purported misconduct in coercing Zaghi to prepare a false declaration was merely incidental to the unprotected conduct at issue in the challenged causes of action.

The causes of action at issue here unquestionably refer (through incorporation by reference of earlier paragraphs in the first amended complaint) to Zaghi's preparation of an inaccurate declaration under duress. And there can be little doubt, if given the opportunity, Zaghi will present evidence at trial that coercion and illusory promises were used to induce him to sign the false declaration as part of defendants' overall scheme to force both him and Aminpour from the companies they had founded. But use of evidence of protected activity to establish a defendant's nonprotected misconduct does not bring a claim within the ambit of section 425.16. (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [first-prong analysis properly considers plaintiff's allegations of defendant's wrongful acts, not evidence plaintiff will need to prove such misconduct]; see *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 273 [allegations of hiring attorneys and filing a lawsuit were only a few of many examples of defendant's alleged mismanagement and misuse of corporate funds; this mention of protected activity was "'only incidental' to a business dispute based on nonprotected activity"]; see also *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809.) The gravamen of this business dispute—""*the allegedly wrongful and injury-producing conduct that provides the foundation for the claims*"" (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc., supra,* 241 Cal.App.4th at p. 1175)—is that, through misrepresentations and concealment, defendants first induced Zaghi unknowingly to

12

over-commit his personal financial resources to the project, then fraudulently manipulated corporate documents so they had full control of the companies' accounts and operations and, finally, manufactured false grounds to terminate both men and to trigger repurchase agreements that provided only a nominal price for their valuable stock.

To be sure, Zaghi's ninth cause of action for breach of employment agreement not only incorporates by reference the earlier allegations regarding preparation of the declaration for the Aminpour lawsuit but also expressly alleges that he was told his employment would continue indefinitely if he cooperated with Great American Chicken and U.S. Food in their defense of that litigation. Breaking that promise is identified as one of eight alleged breaches of his employment agreement. The wrongful conduct at issue in this aspect of Zaghi's claim, however, is not the defendants' arguably protected efforts to obtain Zaghi's cooperation in pending litigation, but the failure to honor the nontermination agreement that purportedly had been made. The consideration for this agreement may have involved protected activity; the breach—the injury producing conduct—did not. (See *Ben-Shahar v. Pickart* (2014) 231 Cal.App.4th 1043, 1053 [breach of contract suit based on defendant's alleged failure to comply with settlement agreement not based on protected activity; "[p]laintiff's complaint is not directed to the act of defendants' filing the unlawful detainer proceeding or the parties' act of settling the matter. Rather, it is directed the [defendants'] acts constituting a purported breach of the settlement agreements"]; *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1117 [breach of contract suit based on defendant's alleged failure to comply with settlement agreement not based on protected activity]; see also *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 190 [cause of action for breach of contract based on nonpayment of overdue invoices for court reporter fees did not arise from protected activity even though court reporting services were provided in litigation matters for defendant attorneys' clients].)

In short, preparation and use of the declaration in litigation may be constitutionally protected speech or petitioning activity, but Zaghi's fraud and contract causes of action

13

do not arise from that protected conduct. (See *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.*, *supra,* 230 Cal.App.4th at pp. 868-869; *Hunter v. CBS Broadcasting Inc*., *supra*, 221 Cal.App.4th at p. 1520.) Thus, the trial court properly denied the special motions to strike to the extent they were directed to the fraud-related and contract causes of action.

   b. *The defamation cause of action*

  Certain prelitigation communications are both protected by the litigation privilege of Civil Code section 47, section (b),[6] and covered by section 425.16, subdivision (e)(2): "[A]lthough litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration"' [citation] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268; accord, *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc*. (2006) 137 Cal.App.4th 1118, 1128 [a cause of action arising from a defendant's prelitigation communications is covered by § 425.16, subd. (e)(2), if litigation is "'contemplated in good faith and under serious consideration'"]; see *Flatley v. Mauro, supra*, 39 Cal.4th at pp. 319, 322, fn. 11 [communications in connection with anticipated litigation are considered to be under consideration or review by a judicial body within the meaning of § 425.16].)

---

6  "The usual formulation of the litigation privilege is that it 'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' [Citation.] The principal purpose of the litigation privilege 'is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' [Citation.] The litigation privilege 'promotes the effectiveness of judicial proceedings by encouraging "open channels of communication and the presentation of evidence" in judicial proceedings.'" (*GetFugu, Inc. v. Patton Boggs, LLP* (2013) 220 Cal.App.4th 141, 152-153.) Case law has expanded the scope of the litigation privilege to include publication to nonparties with a substantial interest in the proceedings. (*Ibid*.)

14

Citing the companies' pending litigation with Aminpour and asserting they were also investigating Zaghi's possible misconduct that "resulted in this very litigation," the individual moving defendants contend any alleged defamatory statements fell within section 425.16, subdivision (e)(2), as protected prelitigation communications and, as a result, the trial court erred in rejecting their special motion to strike directed to Zaghi's defamation cause of action without considering whether he had established a probability of prevailing on the claim. (Although the corporate defendants also advance this argument on appeal, as discussed, in their moving papers they relied solely on the allegations they had conspired with litigation counsel to coerce Zaghi into signing a perjured declaration to establish the applicability of section 425.16 as to all challenged causes of action, including the cause of action for defamation.)

This argument is fatally flawed. Zaghi alleged he had been defamed by statements, intended to hide defendants' own wrongdoing, that he had been dishonest in his business dealing with Yum Brands, including that he had concealed information related to acquisition financing for the KFC and Long John Silver's restaurants and the actual ownership of Great American Chicken and U.S. Food.[7] Yet the only evidence proffered to satisfy the required threshold showing that the defamatory statements were protected prelitigation communications was Aslan's declaration that communications by the individual defendants during the first three months of 2013 with representatives of Yum Brands "were done for several reasons including but not limited to obtaining information to further our then pending litigation against Aminpour as well as our ongoing investigation of Zaghi."

---

[7] Although Zaghi's allegations of defamation were made on information and belief and are somewhat general in terms of content and timing, the trial court overruled the demurrers of Levy, Aslan and Frazier, as well as Great American Chicken and U.S. Food, to this cause of action. The demurrers of Liu and Valiente to the defamation cause of action were sustained with leave to amend because, as to them, Zaghi alleged in the first amended complaint only that the tortious actions of Levy, Aslan and Frazier had been committed "with the knowledge, consent, encouragement and support of the remaining Defendants."

15

Even if Yum Brands, as the franchisor/owner of the KFC and Long John Silver's names, had a substantial interest in litigation involving the principals in Great American Chicken, Aslan's declaration fails to explain how statements made about Zaghi were designed to obtain information about Aminpour or were otherwise logically related to the subject matter of the pending Aminpour litigation. Similarly, given that Zaghi is the plaintiff in the case at bar and is suing defendants for their allegedly fraudulent activities, which culminated in his wrongful termination, it is difficult to understand how it can be asserted in good faith that Levy, Aslan or Frazier were contemplating "this very litigation" at the time they made their defamatory statements about Zaghi to personnel at Yum Brands.

Moreover, Aslan's declaration clearly states the communications with Yum Brands during the relevant time period were done for "several reasons" and were "not limited" to information-gathering for pending or anticipated litigation. That carefully phrased testimony, with its cavernous hole for statements made for other, nonlitigation purposes, precludes a finding that the gravamen of Zaghi's defamation cause of action is based on nonincidental protected activity. The trial court properly denied the special motions to strike the defamation cause of action, as well.

## DISPOSITION

The order denying the special motions to strike is affirmed. Zaghi is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.                                        BLUMENFELD, J.[*]

---

[*]      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16