Filed 1/16/25  Bakhtiyari v. Holden CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MARYAM BAKHTIYARI,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JANELLE HOLDEN, et al.,<br><br>Defendants and Appellants. | B335221<br><br>(Los Angeles County Super. Ct. No. 23STCV18160) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Reversed and remanded with directions.

Kerendian & Associates, Shab Kerendian and Craig Cawlfield for Defendants and Appellants.

J. Supple Law, and Peter F. Finn for Plaintiff and Respondent.

_____

Defendants and appellants Janelle Holden (Defendant) and Janelle Holden, D.D.S., Inc.[1] appeal from an order denying their special motion to strike allegations from the complaint (anti-SLAPP motion; Code Civ. Proc., § 425.16)[2] filed by plaintiff and respondent Maryam Bakhtiyari (Plaintiff). On appeal, Defendant contends that the motion should have been granted because Plaintiff's claims arise from speech protected under the anti-SLAPP statute, and Plaintiff has not met her burden to show a probability of prevailing. Defendant asks this court to reverse the trial court's order and remand, either with directions to grant the motion, or alternatively, directions to determine whether Plaintiff has shown a probability of prevailing on the merits. We reverse and remand for the trial court to evaluate the sufficiency of Plaintiff's pleading and evidence and decide in the first instance whether to strike Plaintiff's defamation claim and any other causes of action.

---

[1] The corporate entity is a named defendant and an appellant, but because we focus primarily on Holden as an individual, our opinion refers to Defendant in the singular. The corporate entity will be identified as "Holden, D.D.S., Inc." as necessary.

[2] "SLAPP" stands for strategic lawsuit against public participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Unless otherwise specified, all subsequent statutory citations are to the Code of Civil Procedure.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Factual Background

Plaintiff and Defendant are both dentists with active practices in the city of Manhattan Beach. Defendant's practice focuses on pediatric dentistry, Plaintiff's practice focuses on "non-invasive and non-extraction orthodontics, temporo-mandibular joint (TMJ) and sleep apnea," and the two dentists have some patients in common. According to Plaintiff, Defendant has not contacted Plaintiff with any issues or criticism about her work as to any patients, other than fewer than 10 emails during the 17 years they have both been in practice in Manhattan Beach. Nevertheless, Plaintiff contends that for 17 years, Defendant has made statements questioning Plaintiff's licenses, calling her treatment hocus-pocus, stating that she Plaintiff used outdated appliances, and telling patients that Plaintiff was causing permanent harm to their gums and was not licensed to do orthodontics.

## II. Complaint Allegations

Plaintiff filed a complaint against Defendant in July 2023, alleging six causes of action: (1) defamation, (2) slander per se, (3) trade libel/product disparagement, (4) intentional interference with prospective business and economic advantage, (5) negligent interference with prospective business and economic advantage, and (6) unfair business practices.

The following are factual allegations contained in the complaint. Defendant and Plaintiff practice in different fields of

dentistry, and Defendant "does not practice and has none or negligible experience practicing in the fields of orthodontics, craniofacial pain management or sleep apnea." Defendant "maliciously made false and defamatory statements" about Plaintiff "to other medical professionals and/or patients, including false accusations about [Plaintiff's] dental practices and capabilities." Defendant accused Plaintiff "of incompetence, unprofessional conduct, and characterized her dental procedures as outdated, 'hocus-pocus', dangerous and harmful." Defendant repeatedly told Plaintiff's patients that Plaintiff "is not licensed and/or competent to practice orthodontics." Defendant also told multiple of their mutual patients that Plaintiff's "work and plan were outdated and incorrect (even though the treatments in some cases were ongoing and unfinished); that [Plaintiff] was not competent to perform the contracted dental services for the patient; and that the patient should cancel her contract with [Plaintiff] mid-treatment to continue with a different dentist." Defendant made these statements "both directly and indirectly to potential patients, existing patients, and the broader dental community, causing harm to [Plaintiff's] practice, professional standing, and personal reputation."

The complaint further alleged that "[t]he State of California does not have any separate licensing requirements for the practice areas of orthodontics or craniofacial pain management." As a licensed dentist, Plaintiff was licensed to practice in both fields. Defendant's statements "were intended to make patients and other medical professionals believe that [Plaintiff] lacked the professional qualifications to practice in her chosen fields." Defendant's statements caused significant harm to Plaintiff's professional and personal reputation.

4

Plaintiff alleged on information and belief that Defendant made the false statements "out of professional jealousy," with an intent to harm Plaintiff's practice and reputation.

Defendant made false oral statements, "both directly and indirectly to potential patients, existing patients, and the broader dental community" about Plaintiff's "incompetence and unprofessional conduct and characterized her dental procedures as outdated, dangerous and harmful." Defendant made "false, unprivileged statements to others that imputed a lack of qualification, licensing, capacity, or integrity" to Plaintiff and her dental practice.

Defendant made the statements with knowledge or reckless disregard for the truth, and she was motivated by professional jealousy and bias or prejudice based on Plaintiff's sex and ethnic background.

The complaint alleged on information and belief that Defendant sought to force Plaintiff to discontinue practicing in the Manhattan Beach area.

## III. Defendant's Anti-SLAPP Motion

In September 2023, Defendant filed an anti-SLAPP motion and supporting declarations. Defendant argued that the gravamen of the complaint was based on speech protected under section 425.16, subdivision (e)(4), and that Plaintiff could not establish a probability of prevailing on any of her claims stemming from her defamation claim. The motion argued the claims were insufficient because Plaintiff had not alleged with requisite specificity what was said, to whom, and when, and to the extent any statements were made, they did not support a

5

defamation claim because they were either truthful statements of fact or nonactionable statements of opinion. In addition, Plaintiff's defamation claim was inadequate because there was no evidence of actual malice.

Defendant's declaration described her understanding of the process by which an orthodontist becomes board certified by the American Board of Orthodontics. She stated, "Although licensed dentists can perform orthodontic treatment in California, I do not perform orthodontic treatment." If Defendant observed a patient to have an orthodontic issue or believed the patient could benefit from orthodontic treatment, her practice was to "recommend that the patient be seen by a specialist – specifically, an orthodontist, and usually one who is board certified by the American Board of Orthodontics – rather than a general dentist." In addition, if a patient with an orthodontic issue was receiving treatment from someone who was not an orthodontist, her practice was to recommend that the patient consider getting a second opinion from an orthodontist. Defendant had followed this practice with Plaintiff's patients. Defendant acknowledged that, to the extent it could be called an issue, her only issue with Plaintiff was that Plaintiff "is a general dentist and it is my belief that my pediatric patients who may need orthodontic care should be seen by orthodontists, whom I believe provide the best possible orthodontic care." Defendant also denied having any personal bias or animosity towards Plaintiff.

## IV. Opposition to Anti-SLAPP Motion

In December 2023, Plaintiff filed an opposition and supporting declarations, as well as objections to Defendant's supporting evidence.

The declarations Plaintiff offered in support of her opposition to the anti-SLAPP motion included accounts by three different parents. Renee Tinker had two children who were treated by Plaintiff between 2017 and 2023. In 2021, Tinker's oldest son had braces applied by Plaintiff and had some issues with his gums. Defendant sent Plaintiff an email voicing concerns with the treatment, and told Tinker that Plaintiff's treatment had caused injury to Tinker's oldest son and that he had suffered permanent bone loss. Tinker had her second son get braces with Plaintiff, and Defendant's negative comments continued. Tinker declared that "the negative comments kept coming from Dr. Holden throughout the treatment of my son Kevin through January 4, 2023. Beyond merely mentioning a broken bracket here or there, she has stated that Dr. Maryam is not licensed to practice orthodontics, and attached [*sic*] her personally as if Dr. Holden has a grudge against her. If Dr. Holden had made these comments before I had a chance to get to know Dr. Maryam, it would have caused me to go elsewhere for orthodontics." Two other parents also declared that Defendant stated to them that Plaintiff was not licensed to practice orthodontics, although the declarations do not specify when the statements were made.

Plaintiff's declaration summarized her training and experience, and described the effect of hearing from her patients about Defendant's comments.

## V. Reply Brief and Declaration

Together with a reply brief, Defendant filed a declaration reviewing the dates on which various patients referenced in Plaintiff's opposition were last seen in Defendant's office. As relevant here, Kevin Tinker was most recently seen in Defendant's office on February 14, 2023, while two other patients were last seen sometime between 2013 and 2021.

## VI. Trial Court's Ruling

In a written decision, the trial court denied Defendant's motion to strike the complaint, finding Defendant did not demonstrate that the statements identified in the complaint were made in connection with an issue of public interest. The court reasoned that because Defendant only communicated her negative view of Plaintiff's competence and credentials to her patients and the patients' guardians, the statements did not implicate a public issue. Because Defendant did not meet her burden to demonstrate that the complaint arose from protected activity, the trial court did not consider whether Plaintiff's evidence met her burden to demonstrate a probability of prevailing on the merits of her causes of action.

Defendant filed a timely notice of appeal. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

## DISCUSSION

## I. Anti-SLAPP Law

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

" 'Speech is often provocative and challenging.' [Citation.] But our legal tradition recognizes the importance of speech and other expressive activity even when—perhaps especially when—it is uncomfortable or inconvenient. The Legislature enacted the anti-SLAPP statute to safeguard that tradition against those who would use the judicial process to chill speech they oppose." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1256.) The anti-SLAPP statute is designed to "encourage continued participation in matters of public significance" (§ 425.16, subd. (a)) and it "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

Ruling on an anti-SLAPP motion to strike involves a two-step process. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "First, the court decides whether the

9

defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Ibid.*; § 425.16, subd. (b)(1).) If that first threshold is met, the court then determines whether the challenged claim has minimal merit, meaning that plaintiff "has demonstrated a probability of prevailing on the claim," considering " 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon*, at pp. 66–67, § 425.16, subd. (b)(2).) We review de novo a trial court's denial of an anti-SLAPP motion based on the moving party's inability to clear the first threshold. (*Wilson, supra*, 7 Cal.5th at p. 884.)

The anti-SLAPP statute identifies four categories of protected speech or activity, but the only one at issue in the current appeal is described in section 425.16, subdivision (e)(4), often referred to as the "catchall" provision.[3] (See, e.g., *Geiser, supra*, 13 Cal.5th at p. 1243.) In *FilmOn.com, Inc. v. DoubleVerify, Inc.* (2019) 7 Cal.5th 133 (*FilmOn*), the California Supreme Court provided the lower courts with two-step framework for evaluating whether speech or conduct qualified as

---

[3] Section 425.16, subdivision (e) describes the four protected categories as including "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

protected activity under the catchall provision: "First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*FilmOn*, 7 Cal.5th at pp. 149–150.) In examining the functional relationship between the speech and the public issue to determine whether the speech or conduct is protected under anti-SLAPP statute's catchall provision, the court focuses on the *context* or specific circumstances in which the statement was made, "including the identity of the speaker, the audience, and the *purpose* of the speech." (*FilmOn*, 7 Cal.5th at pp. 142–143, emphasis added.) In other words, following the two-step process set forth in *FilmOn*, a court focuses first on the *content* of the speech, and then on the *context* in which it was made.

In a subsequent opinion, the Supreme Court explained, "where the first step is satisfied, it performs an important function in the inquiry: It operates as a lens that focuses the analysis at the second step. In other words, to assess whether the challenged activity contributes to discussion of a public issue, we must identify some public issue that the challenged activity purports to address." (*Geiser, supra*, 13 Cal.5th at p. 1250.)

Before analyzing whether the alleged defamatory statements at issue in this case are protected speech under section 425.16, subdivision (e)(4), we review two pertinent cases: *Yang v. Tenet Healthcare Inc.* (2020) 48 Cal.App.5th 939 (*Yang*) and *Murray v. Tran* (2020) 55 Cal.App.5th 10 (*Murray*). In *Yang*, the plaintiff was a general surgeon who filed suit alleging that a

11

hospital, its medical staff, and individual doctors falsely stated to other healthcare providers, members of the public, and patients that (1) plaintiff was not qualified or competent to practice her specialties; (2) her ethics and behavior fell below applicable standards; (3) she was dangerous to her patients, hospital employees, and medical staff; and (4) she was under investigation. (*Yang*, 48 Cal.App.5th at p. 943.) The reviewing court found the alleged defamatory statements were about a licensed doctor's qualifications, competence, and ethics, specifically any purported deficiencies in those areas, and therefore concerned a public issue. (*Id*. at p. 947.) Considering the functional relationship between the speech and the public issue, the *Yang* opinion acknowledged the cautionary note from *FilmOn*: " ' "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." ' " (*FilmOn*, *supra*, 7 Cal.5th at p. 150; *Yang* at p. 948.) " 'What it means to "contribute to the public debate" [citation] will perhaps differ based on the state of public discourse at a given time, and the topic of contention' but ultimately 'we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest.' " (*FilmOn*, at pp. 150–151; *Yang* at p. 948.) The *Yang* court found that "defendants directly participated in and contributed to the public issue." (*Yang*, at p. 948.) Focusing on the statements by defendants directing other doctors to not refer patients to the plaintiff, the statements were "similar to a statement made by a third party to aid and protect consumers[]" and "akin to consumer protection information in that defendants ostensibly seek to protect the

12

patients' interests," and such protective statements qualified for anti-SLAPP protection. (*Ibid*.) The court rejected plaintiff's argument that certain statements—specifically warning doctors not to refer their patients to plaintiff—were to a limited audience and did not directly impact a broad segment of society. "Given that statements aimed at protecting groups of consumers have been viewed as sufficiently broadly applicable to be protected, we think it clear that statements aimed at protecting members of the public who might see a doctor are sufficiently broadly applicable." (*Id*. at p. 949.) Other statements qualified for protection because they were "communicated to the public, not just to discrete doctors or hospital staff members. This context is significant, because speech to the public about a doctor's qualifications furthers the public discourse on that matter." (*Yang*, at p. 948.)

*Murray v. Tran* was not cited by either party, but its reasoning also guides our analysis of the functional relationship between speech and the public issue in question. Plaintiff Murray and defendant Tran were two dentists who co-owned a dental practice. Murray practiced dentistry, while Tran handled the business operations through his own separate entity, which also owned a number of other dental practices. (*Murray*, *supra*, 55 Cal.App.5th at p. 16.) After the business relationship between Murray and Tran soured, Tran made statements criticizing the quality of Murray's dental work, and these statements formed the basis for two defamation causes of action that Murray added to a pre-existing lawsuit between the two dentists. (*Id*. at p. 20.) Applying *FilmOn's* two-step framework, the *Murray* court concluded that only one of five distinct categories of defamatory statements alleged in the complaint was protected activity under

13

the anti-SLAPP statute.[4]  All the alleged defamatory statements met the first step inquiry under *FilmOn*, because regardless of category, they concerned Murray's "qualifications and competence to perform his dental services[,]" a topic in which "the public, including current and future dental patients, have a vital interest." (*Murray*, at p. 30.)

The second step analysis required examination of the context of the speech, including the purpose, timing, location, and actual and intended audiences for the statement; some of those factors varied depending on the category of speech.  (*Murray*, *supra*, 55 Cal.App.5th at p. 30.)  The first category involved emails that Tran sent to an attorney and to administrative employees and various individuals involved in Tran's business operation.  The court reasoned that Tran had not shown a functional relationship between the emails and the public issue (Murray's qualifications and competence as a dentist) because none of the recipients bore any responsibility for Murray's competence, and there was no evidence that Tran expected that the recipients would share the information with Murray's current or potential patients.  (*Id*. at pp. 31–32.)  Similar reasoning led the court to find the second and fifth categories of speech were also not protected under the anti-SLAPP statute.  (*Id*. at pp. 32, 33, 35, 36.)

The third category of speech was an email from Tran to a retired dentist, Dr. Burgess, who had sold the practice to Tran

---

[4] *FilmOn* and *Yang* were both published after briefing in Murray's appeal of the trial court's order granting Tran's anti-SLAPP motion was complete, but the appellate court permitted the parties to file supplemental briefing. (*Murray*, *supra*, 55 Cal.App.5th at p. 26.)

14

and Murray about two years before Tran and Murray parted ways, and who had previously worked with Murray.  (*Murray, supra*, 55 Cal.App.5th at p. 33.)  Tran expressed his concern that Murray was providing substandard care, and asked Burgess for advice on how to restore the standard of care at the practice.  "Tran also said, 'I'm afraid if things go further, the California Dental Board will have to get involved[,]' " and attached various documents.  (*Ibid.*)  The *Murray* court noted that in *FilmOn*, the high court discussed two oft-cited opinions that held "section 425.16, subdivision (e)(4) can 'apply "to private communications concerning issues of public interest." ' (*FilmOn, supra*, 7 Cal.5th at p. 146; see *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534 [(*Terry*)]; *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450 [(*Hecimovich*)].)"  (*Murray*, at p. 34.)  Also relevant to the determination was "whether the statements 'were private or widely broadcasted and received, *and for what purpose.*' " (*Murray*, at p. 34, quoting *FilmOn, supra*, 7 Cal.5th at p. 146.)  Still quoting from *FilmOn*, the *Murray* court reviewed the contextual factors in *Terry* and *Hecimovich* that qualified otherwise private communications to be considered part of a public conversation.  (*Murray*, at p. 34.)  The *Murray* court found those contextual factors missing from Tran's private communication with Burgess, because there was no record evidence that Tran communicated with the Dental Board, and no evidence that his concerns were being discussed or intended to be discussed with current or prospective patients.  (*Murray*, at p. 34.)  For that reason, Tran's email to Burgess was not protected under the anti-SLAPP statute.

The only category where the *Murray* court concluded the speech was protected under the anti-SLAPP statute involved oral statements Tran made to another dentist who had recently employed Murray after Tran had expelled Murray from their joint practice.  Tran texted the other dentist that Tran had something alarming to tell him.  "During their ensuing phone call, Dr. Tran allegedly told [the other dentist] the following: ' "[Dr. Tran was] looking through his charts of patients at his office in La Jolla [and] found bad work happening at his practice. He [was] implying that he had evidence that Dr. Murray is doing substandard care . . . .  He also stated that he is sending evidence to the Board to substantiate his claim.  I asked him exactly what substandard care did he see that Dr. Ian Murray did.  [Dr.] Tran stated that he cannot tell me.  He stated the reason he is telling me because he likes me and that he wants to protect his patients and my patients from Dr. Murray's (alleged) substandard care." ' " (*Murray*, *supra*, 55 Cal.App.5th at p. 35.)  The reviewing court focused on Tran's statements that he wanted to warn the dentist who was now employing Murray "about problems with Dr. Murray's work because he wanted to 'protect' [the other dentist's] patients from 'substandard care.'  These statements— made to a current employer—were directly tethered to the issue of public interest (a dentist's competence to perform dental work) and promoted the public conversation on that issue because they were made to a person who had direct connection to and authority over the patient population with whom Dr. Murray was working at the time." (*Murray*, at p. 35.)  In other words, the *Murray* court determined that the context of the phone conversation between Tran and the other dentist demonstrated that the speech contributed to a conversation about a public

16

issue. The role of the speaker, the intended audience, and the purpose of the speech all played a critical role in the court's conclusion.

## II. The Alleged Statements Are Protected Activity

Analyzing Defendant's alleged defamatory statements using the two-step inquiry set forth in *FilmOn*, we find that Defendant has met her burden to show the alleged statements fell within the anti-SLAPP statute's catchall provision, section 425.16, subdivision (e)(4).

The alleged defamatory statements concerned Plaintiff's qualifications and competence to provide orthodontic care. As such the "public issue implicated is the qualifications, competence, and professional ethics" of a licensed dentist, a matter that several cases have recognized as clearing the bar for a public issue. (*Yang*, *supra*, 48 Cal.App.5th at p. 947; *Murray*, *supra*, 55 Cal.App.5th at p. 30 [a dentist's qualifications and competence to perform dental services "are matters about which the public, including current and future dental patients, have a vital interest"]; see also *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 201 [professional conduct of California licensed physicians are " 'matters of public significance' "]; *Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 429 [consumers "have an interest in being informed of issues concerning particular doctors and health care facilities"].)

Examining the functional relationship between the speech in question and the public conversation about the issue, we keep in mind that our analysis "must include a consideration of the

17

*context* or specific circumstances in which the statement was made, 'including the identity of the speaker, the audience, and the purpose of the speech.' " (*Murray*, 55 Cal.App.5th at p. 28, quoting *FilmOn*, *supra*, 7 Cal.5th at pp. 140, 151–152.) Defendant contends that her statements about Plaintiff's qualifications and competence to provide orthodontic care contributed to the public conversation because the complaint alleges that such statements were made not just to the two dentists' mutual patients, but also to the broader dental community and other medical professionals. She further contends that even focusing solely on her statements to specific patients or their guardians, the statements were still protected because they bore a functional relationship to the public issue of a medical or dental professional's competence.

Plaintiff contends that the alleged defamatory speech does not fall under the anti-SLAPP statute's catchall provision, based on the limited audience for Defendant's statements and because the statements were not sufficiently related to any public conversation about Plaintiff's qualifications or credentials. Plaintiff argues the facts here are distinguishable from the speech at issue in *Yang*, where the plaintiff alleged that defamatory statements were communicated to the public. (*Yang*, *supra*, 48 Cal.App.5th at p. 948.) Plaintiff argues Defendant's statements to parents of individual patients are more comparable to the reports at issue in *FilmOn*, which were issued "not to the wider public . . . but privately, to a coterie of paying clients." (*FilmOn*, *supra*, 7 Cal.5th at p. 153.)

We agree with Defendant that Plaintiff's complaint does not rely solely on statements to the guardians of particular patients, but also includes allegations that false and defamatory

18

statements were made to existing and potential patients, and to other dentists and medical professionals.  In addition, the evidence shows that the purpose of Defendant's speech was to protect Plaintiff's current and potential patients from what Defendant believed to be ineffective treatment methods.  For example, the parent of a mutual patient stated that Defendant's comments "ranged from talking about [Plaintiff's] not being licensed to practice orthodontics to stating that some of the methods she was using were not correct or would not be effective."  Another patient declared that Defendant "tried hard to convince me that [Plaintiff] did not know how to do orthodontics."  Defendant's declaration also stated that regardless of whether the patient was seeing Plaintiff or another dentist, she would advise the parent to seek a second opinion from an orthodontist, many of whom are certified by the American Board of Orthodontics.

We are persuaded that Defendant's statements bore a functional relationship to the public issue of a dentist's qualifications and competence.  Whether true or false, the purpose and effect of Defendant's alleged statements about Plaintiff's qualifications, competence, and the quality of her work, was to contribute to the public issue of a dentist's qualifications to practice orthodontics.  In that sense, they are similar to the protected speech in *Yang* (48 Cal.App.5th at pp. 948–949) and *Murray* (55 Cal.App.5th at p. 35), where the purpose and intended audience of the alleged defamatory speech supported the conclusion that the statements were made to protect patients.

The trial court was therefore incorrect when it found Defendant had failed to meet her burden to show that the claims

asserted by Plaintiff arose from activity that was protected under the catchall provision of the anti-SLAPP statute.

## III. We Reverse as to the Corporate Entity Defendant and Remand for the Trial Court to Evaluate Whether Plaintiff Has Provided Sufficient Evidence to Demonstrate a Probability of Prevailing Against Defendant

With respect to the corporate entity defendant, Holden, D.D.S., Inc., our review of the complaint reveals that other than naming the entity as a defendant in the caption, Plaintiff makes no factual allegations against Holden, D.D.S., Inc. The complaint is legally insufficient to support any claim against Holden, D.D.S., Inc., and we instruct the trial court to grant the anti-SLAPP motion as to Holden, D.D.S., Inc.

Because the trial court concluded Defendant's statements were not protected speech under the anti-SLAPP statute, it did not consider whether Plaintiff met her burden to demonstrate that he claims had minimal merit.

We remand the matter to allow the trial court to evaluate whether the evidence Plaintiff offered in support of her claims against Defendant was sufficient to survive an anti-SLAPP motion. (See *Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1527 ["the more prudent course is to remand the matter to the trial court to determine in the first instance whether [the plaintiff] demonstrated a reasonable probability of prevailing on the merits"].) We express no view on Plaintiff's probability of prevailing.

20

## IV. Plaintiff Forfeited Her Opportunity to Appeal the Trial Court's Denial of the Request for Additional Discovery

In her respondent's brief, Plaintiff asks this court to remand with instructions to give her the opportunity to conduct limited discovery, specifically production of a list of mutual patients, and depositions of Defendant and other witnesses. However, she did not meet the statutory requirements for seeking this form of relief in the trial court, and offers no good explanation for that failure.

The anti-SLAPP statute generally provides that "[a]ll discovery proceedings in the action shall be stayed upon the filing of" an anti-SLAPP motion "until notice of entry of the order ruling on the motion." (§ 425.16, subd. (g).) The statute does permit, however, a court to "order that specified discovery be conducted notwithstanding this subdivision" on noticed motion and for good cause shown. (§ 425.16, subd. (g).) "In the anti-SLAPP context, 'good cause' requires 'a showing that the specified discovery is necessary for the plaintiff to oppose the [anti-SLAPP] motion and is tailored to that end.' [Citation.]" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 692; accord, *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 891.)

Before the trial court, plaintiff did not file a noticed motion seeking an order for limited discovery as permitted under section 425.16, subdivision (g). Instead, in her opposition to Defendant's motion to strike, plaintiff merely argued that if the court found Plaintiff's evidence insufficient to make a prima facie case against Defendant, Plaintiff "respectfully requests leave to conduct discovery in order to more properly oppose Defendants'

21

motion."  The trial court did not rule on Plaintiff's request, but because Plaintiff never filed a noticed motion, we conclude she is not entitled to the requested discovery.

## DISPOSITION

The order denying the special motion to strike is reversed, and the case is remanded to the trial court to consider whether plaintiff and respondent Maryam Bakhtiyari has shown a probability of prevailing on her claims.  Defendants and appellants Janelle Holden and Janelle Holden, D.D.S., Inc. are awarded costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


WE CONCUR:


HOFFSTADT, P.J.


KIM (D.), J.